UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITNEY BEAUBIEN, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
CRAIG BEAUBIEN,

    Plaintiff,

v.

CHARU TRIVEDI, M.D., ET AL.,

    Defendants.
_____/

Case No. 21-cv-11000

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [ECF NO. 87]

### I. Introduction

This is a medical malpractice action alleging that Defendant Charu Trivedi, M.D., breached the standard of care by failing to timely diagnose Plaintiff Whitney Beaubien's husband, Craig Beaubien ("Beaubien"), with terminal renal cell carcinoma ("RCC"). Mr. Beaubien passed away on June 18, 2023. Plaintiff's complaint also alleges a claim against the Toledo Clinic, Inc. d/b/a Toledo Clinic Cancer Centers for medical malpractice. *See* ECF No. 61. Trial is scheduled to begin on July 17, 2024.

1

Now before the Court is Plaintiff's Motion for Reconsideration [ECF No. 87], filed on June 24, 2024. Defendants responded on July 1, 2024. The matter is fully briefed. For the reasons set forth below, Plaintiff's Motion for Reconsideration is **DENIED**.

## II.   Background

Craig Beaubien saw Defendant Charu Trivedi, M.D., on November 27, 2018. He was referred there by his family doctor to determine the cause of his abnormal blood tests showing a high hematocrit (a measure of the red-cell concentration of the blood). Though Dr. Trivedi had determined that kidney cancer was one of multiple possible causes of the patient's abnormal blood tests, she disregarded it without any diagnostic testing.

Approximately seven months after Craig began treating with Dr. Trivedi, he started experiencing headaches that prompted him to seek medical care at ProMedica Monroe and the University of Michigan. The imaging studies and other tests performed at ProMedica and University of Michigan showed an 8.3-centimeter tumor in Craig's kidney, with metastasis to the brain, lungs, and retroperitoneal lymph nodes. Beaubien was treated with stereotactic radiotherapy, targeted chemotherapy, and a newer immunotherapy regime. He also had surgery.

Plaintiff's expert, Dr. Russell Pachynski, M.D., a board-certified oncologist, reviewed Plaintiff's medical records from Dr. Trivedi, Promedica, and the

2

University of Michigan Hospital. He drafted a report that was published on July 24, 2022. In his original expert report and at his deposition, Dr. Pachynski provided two general opinions, *inter alia*: (1) with earlier diagnosis, Beaubien would have lived an additional 12 to 36 months if no brain metastasis was present in November 2019; and (2) he would have lived an additional 9 to 12 months if brain metastasis was present at that time.

Following Beaubien's death, 54 months and 21 days after his initial November 2018 visit with Dr. Trivedi, and 47 months and 24 days after his diagnosis, Dr. Pachynski submitted a supplemental report. In his report, Dr. Pachynski stated that, "[i]n the pivotal trial that led to the FDA approval, patients with metastatic kidney cancer without brain metastasis treated with the exact same immunotherapy that Mr. Beaubien received lived a median of 55.7 months (~ 4.6 years). At 6 years, approximately 40% of these patients are still alive." ECF No. 64-5, PageID.1520.

Dr. Pachynski opines that, because Mr. Beaubien responded well to the immunotherapy despite having developed brain metastases, Beaubien "would have responded the same had he not developed brain metastases." ECF No. 68, PageID.1813. He arrives at this hypothesis by applying a "1.45x response ratio" to treatment. *Id.* Dr. Pachynski calculated the response ratio by dividing the number of months Mr. Beaubien survived from the date of his diagnosis (48 months) by the

3

median overall survival rate for patients with kidney cancer without brain metastases (33 months). ECF No. 64-5, PageID.1521. He then multiplied that ratio (1.45) by the overall survival rate for kidney cancer patients without brain metastases (52 months). *Id.* The result of this formula is a survival rate of 75.4 months, and because Beaubien survived for 48 months, Dr. Pachynski concluded that he would have lived 27 months longer had he been earlier diagnosed. Accordingly, Dr. Pachynski believes that Craig would have lived to approximately 75.4 months—instead of 48 months—had he not developed brain metastases, resulting in an approximate reduction in overall survival by 2 years.

After Dr. Pachynski's supplemental report was disclosed, Defendants filed a Daubert Motion to Strike Dr. Russell Pachynski's Opinion Concerning Reduced Survival [ECF No. 69]. The motion urged the Court to strike a supplemental expert report authored by Plaintiff's expert, Dr. Russell Pachynski, M.D., a board-certified oncologist. In an Opinion and Order, the Court noted that:

> Plaintiff does not cite literature discussing the calculation of anything resembling a 'response ratio.' She does not assert that Dr. Pachynski's method in calculating the response ratio is generally accepted in the scientific community. She does not discuss the rate of error involved in performing these calculations. She does not say that other members of the scientific community have employed similar methods to calculate anything like a 'response ratio' to determine a patient's survival rate based on how he/she would have responded to treatment had it began on an earlier date.

4

*Beaubien v. Trivedi*, No. 21-11000, 2024 WL 1071859, at *5 (E.D. Mich. Mar. 11, 2024). The Court denied the motion without prejudice and reopened discovery "for the narrow purpose of allowing the parties to depose Dr. Pachynski about his supplemental report." ECF No. 79, PageID.2260.

After Dr. Pachynski's continued deposition, Defendants filed a Renewed Daubert Motion to Strike Dr. Russell Pachynski's Opinion on Reduced Survival [ECF No. 81]. Granting the motion, the Court determined, *inter alia*, that

> The problem with Dr. Pachynski's calculation is that Plaintiff does not show that it has been validated as a statistical model. Further, it does not account for any variables other than brain metastasis and Beaubien's response to treatment. Dr. Pachynski compares Beaubien's treatment response to other patients who participated in medical studies, some of them had treatment before metastasis, and some had treatment after metastasis. He bases his conclusion—that Beaubien would have lived an additional 27 months had he been earlier diagnosed—on the fact that he responded well to treatment, and the survival rate of other patients who had treatments with immunotherapy and with non-immunotherapy. Plaintiff also cites scientific literature that discusses rates of survival for RCC patients with and without metastases. Dr. Pachynski's calculations are distinct from other well-established statistical models discussed in the scientific literature, however, because he calculates a potential survival rate that would have occurred had Beaubien been treated earlier. And Dr. Pachynski's supplemental report does not discuss his consideration of other relevant variables, in addition to surgical treatment, such as tumor grade, patient age, sex, metabolic issues, etc., compared to the patients involved in the studies he cites.
>
> Plaintiffs fail show that Dr. Pyschinki's method of calculation of the response ratio and Beaubien's would be survival rate has: (1) been tested and validated, (2) been subjected to peer review and publication, (3) that is does not have a high potential rate of error, or (4) that the method enjoys a 'general acceptance' within the relevant scientific

5

community. Accordingly, the Court finds that Dr. Pachynski's method for calculating the response ratio is unreliable. And the Court will strike Dr. Pachynski's supplemental opinion on reduced survival, pursuant to Fed. R. Evid. 702.

ECF No. 85, PageID.2496.

In her motion for reconsideration, Plaintiff submits that the Court's previous ruling "obviously has a major detrimental impact on Plaintiff's claimed damages and how this case will be tried, and Plaintiff believes that this Court's ruling was a mistake based on facts and law as applied to this case." ECF No. 87, PageID.2500. The Court granted Defendants' motion because it determined that Dr. Pachynski' s method of calculating the response ratio was unreliable. *See* ECF No. 85. Plaintiff says that she "respectfully disagrees and requests this Court to set aside its Order (ECF No. 85) and allow Dr. Pachynski to testify on reduction in overall survival as his opinions are reliable and/or hold a Daubert hearing to test the scientific reliability of his testimony." *Id*.

The Court will discuss the applicable law and analysis below.

### III. Applicable Law and Analysis

E.D. Mich. L.R. 7.1(h)(2) provides that motions for reconsideration of non-final orders "are disfavored." They may be brought only upon the following grounds:

(A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

6

   (B) An intervening change in controlling law warrants a different outcome; or

   (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

*Id.*

It is well established that "a motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F.Supp.2d 628, 632 (E.D. Mich 2001). However, "[a] motion for reconsideration should be granted if the movant demonstrates a palpable defect by which the court and the parties have been misled and show that correcting the defect will lead to a different disposition of the case." *DirectTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 921 (E.D. Mich 2003). "A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain." *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich 1997).

Plaintiff argues that reconsideration is warranted and that Dr. Pachynski's supplemental opinion is reliable because: (1) Defendants' Daubert Motion was not supported by adequate evidence; (2) data Dr. Pachynski cited from scientific literature indicates that "40% of RCC patients (without brain metastasis) who received new immunotherapy were alive at 6 years, i.e., 72 months"; and (3) Dr. Pachynski testified that his response ratio is similar to a "nomogram". ECF No. 87, PageID.2500-2501.

They also say that "unlike Dr. Pachynski, Defendants did not perform any individualized assessment of Craig to determine his overall survival. Simply using a median overall survival is not a proper metric especially when data suggests that some patients respond better to treatment and have longer overall survival." *Id*., at PageID.2501. Notably, Plaintiff raises all the same arguments that she did in response to Defendants' Renewed Motion to Strike. And the Court made its ruling in a written opinion. Plaintiff points to no error, new facts, or law that warrants a different outcome. The Court notes, however, that she says "Defense counsel attached random articles without proper foundation in support of Defendants motion. These articles were not presented to Dr. Pachynski at his deposition. This Court referenced these articles in its ruling and should not have considered them given the lack of foundation and relevance to the issues at hand." *Id*.

The Court's ruling turned on Dr. Pachynski's failure to discuss the variables he would consider in applying the response ratio. For example, Dr. Pachynski relies on studies where the patients had metastatic kidney cancer, no brain metastasis, and lived a median of 55.7 months with the immunotherapy treatments, 7.7 months longer than Beaubien. Approximately 40% of the patients were still alive at six years. Beaubien lived for 48 months after diagnosis, 15 months longer that his expected median overall survival rate of 33 months. It appears that, because he lived 1.45x longer than expected, Dr. Pachynski concludes that earlier diagnosis would have

8

allowed Beaubien to live for 75 months (six years). The Court is not persuaded that this leap in logic, which does not consider any other factors weighing on Beaubien's survival rate, is reliable such that the supplemental opinion is admissible.

Additionally, the Court previously ruled that "Plaintiff[] fail[s] [to] show that Dr. Pyschinki's method of calculation of the response ratio and Beaubien's would be survival rate has: (1) been tested and validated, (2) been subjected to peer review and publication, (3) that is does not have a high potential rate of error, or (4) that the method enjoys a 'general acceptance' within the relevant scientific community." ECF No. 85, PageID.2496. Plaintiff says nothing in its motion to demonstrate that an error has occurred, or that new facts or law warrant reconsideration of this ruling. However, she does point to Dr. Pachynski's extensive qualifications as a doctor of oncology. The Court does not doubt Dr. Pachynski's qualifications, however, they alone do not render his methodology reliable.

Plaintiff also argues that,

> [t]he controlling caselaw on FRE 702 from the U.S. Supreme Court and Sixth Circuit unequivocally states that, "Admissibility under Rule 702 does not require perfect methodology. Rather, the expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd v. Carmichael* 526 U.S. 137, 148-49 (1999). The Sixth Circuit has likewise held that any weakness in the methodology goes to the weight and not the admissibility of testimony. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171 (6th Cir. 2009).

ECF No. 87, PageID.2510.

As Defendants point out, *Best* is distinguishable. That case involved an alleged loss of smell from a chemical exposure. *Best*, 563 F.3d at 174. The plaintiff retained a physician to opine on medical causation and the defendants filed a motion to strike his opinion under Rule 702. The physician used a "differential diagnosis", in addition to his own knowledge of medicine and chemistry, and the data from a published source referred to as the material safety data sheet (MSDS). *Id*. He concluded that certain chemicals contained in a product sold at the defendant's store caused damage to the plaintiff's nasal and sinus mucosa upon inhalation. *Id*., at 181. The Sixth Circuit determined that the physician "employed a valid methodology" to "rule in" the store's product as a cause for the injury because he compiled a list of possible causes for the injury, including the chemicals contained in the product, and he engaged in standard techniques to "rule out" other causes. *Id*., at 181-182.

The *Best* court, and all the authority cited in that case, were heavily focused on the concept of differential diagnosis, which the court viewed as a standard technique that was well recognized. For these reasons, the court determined that "doctors need not rule out every conceivable cause in order for their differential-diagnosis-based opinions to be admissible . . . if [the doctor] failed to consider some other likely cause, [defendant] is free to attack [his] opinion on that basis at trial." *Id*., at 181.

Here, Dr. Pachynski's methodology is distinguishable from the one at issue in *Best* because it does not involve differential diagnosis, it is not a standard methodology, and it uses no techniques to determine whether other variables—such as treatment with radiation, surgery, and chemotherapy, *inter alia*—impacted Beaubien's would-be survival rate had he been earlier diagnosed. *See Kolesar v. United Agriproducts, Inc.*, 246 Fed.Appx. 977, 979 (6th Cir.2007) (Determining that a differential diagnosis expert opinion was unreliable because it failed to rule out other causes of the plaintiff's Reactive Airways Dysfunction Syndrome, including asthma and a preexisting "smoker's cough").

In sum, much of Plaintiff's motion attempts to rehash issues previously ruled on by the Court. She does not point to any palpable defect, new facts, or new law that warrant a different outcome. The court has allowed two briefing period and continued discovery on the reliability of Dr. Pachynski's methodology. Accordingly, the Court will deny Plaintiff's motion for reconsideration and for a *Daubert* hearing.

## IV. Conclusion

Plaintiff's motion for reconsideration is **DENIED**.

**SO ORDERED.**

Dated: July 12, 2024 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 12, 2024, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Deputy Clerk