UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITNEY BEAUBIEN, as Personal
Representative of the Estate of
CRAIG A. BEAUBIEN,

        Plaintiff,

v.

Case No.: 21-cv-11000
U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

CHARU TRIVEDI, *et al.*,

        Defendants.

_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CERTIFICATION OF ISSUE TO MICHIGAN SUPREME COURT REGARDING CONSTITUTIONALITY OF M.C.L. § 600.1483 [#130]

Presently before the Court is Plaintiff Whitney Beaubien's Motion for Certification of Issue to the Michigan Supreme Court Regarding Constitutionality of Noneconomic Damage Caps Contained in MICH. COMP. LAWS § 600.1483 [#130] ("Motion to Certify"), filed pursuant to Eastern District of Michigan Local Rule 83.40 and Michigan Court Rule 7.308 on September 25, 2024. Plaintiff, the personal representative of Craig Beaubien's estate, seeks an order certifying the following issues to the Michigan Supreme Court: "Do the caps on noneconomic

damages found in MICH. COMP. LAWS § 600.1483 violate the Michigan Constitution because they violate the right to trial by jury, violate equal protection and/or violate the separation of powers and, therefore, should be struck down?" ECF No. 130, PageID.5152. The Court ordered Defendants to file a Response, which they filed on October 9, 2024. Plaintiff filed a Reply on October 16, 2024. Upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Plaintiff's Motion to Certify on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Plaintiff's Motion to Certify [#130] is GRANTED.

## I. BACKGROUND

This is a medical malpractice case arising from medical care rendered by Defendant Dr. Charu Trivedi, an employee of Defendant Toledo Clinic, Inc. Dr. Trivedi is a board-certified hematologist and oncologist. On November 27, 2018, Craig Beaubien initiated care with Dr. Trivedi after blood tests ordered by his primary care physician demonstrated that his hematocrit ("HCT") was abnormally high. Dr. Trivedi's impression of Mr. Beaubien's condition was polycythemia secondary to smoking, dehydration, and sleep apnea, and that primary polycythemia could not be ruled out. She suggested increased fluids, weight loss, smoking cessation, and continued CPAP usage, and planned a phlebotomy if Mr. Beaubien's HCT was above 50 at follow-up. Mr. Beaubien followed up with Dr.

Trivedi on several occasions, with his final follow-up taking place on May 2, 2019. His HCT exceeded 50 at every follow-up. At no point did Dr. Trivedi take any imaging studies to ascertain the cause of Mr. Beaubien's high HCT.

On June 23, 2019, Mr. Beaubien went to ProMedica Monroe Regional Hospital complaining of a headache lasting a week, slight visual or depth perception disturbance, mild left-sided weakness since the previous evening, and nausea without vomiting. A head CT performed at that time demonstrated an 8.3 centimeter mass in Mr. Beaubien's right parietal lobe. Mr. Beaubien transferred his care to the University of Michigan Hospital that same day. There, he underwent CTs of his chest, abdomen, and pelvis, which demonstrated multiple bilateral lung nodules concerning for metastatic disease, a large right renal mass representing a primary neoplasm, likely capsular invasion, mild enlargement of proximal left ureter possibly due to tumor inflation, thrombus extending into the peripheral portions of the left renal vein, several mildly enlarged left para-aortic retroperitoneal lymph nodes, and multiple bilateral lung nodules. Based on this imaging, the Hospital noted that Mr. Beaubien likely had renal cell carcinoma ("RCC"), a form of metastatic kidney cancer. Mr. Beaubien underwent a lung biopsy on June 25, 2019, which confirmed RCC. On July 11, 2019, he was told by medical oncologist Dr. Bruce Redman that RCC is not curable and that his treatment would be palliative with the goal of prolonged time and quality of life.

On May 3, 2021, Mr. Beaubien and his wife, Whitney Beaubien, initiated the present lawsuit against Dr. Trivedi and Toledo Clinic, Inc. In their complaint, they alleged that Dr. Trivedi breached the standard of care while caring for Mr. Beaubien by failing to recognize that the polycythemia she was treating him for could have been secondary to RCC. They also alleged that Toledo Clinic, Inc. was responsible for Dr. Trivedi's acts and omissions under principles of *respondeat superior*.

During the pendency of this action, Mr. Beaubien died on June 18, 2023. An estate for Mr. Beaubien was subsequently opened, with Mrs. Beaubien serving as its Personal Representative. Accordingly, the plaintiff in this case changed from Mr. and Mrs. Beaubien to Mrs. Beaubien as Personal Representative of Mr. Beaubien's estate. This case was tried before a jury from July 17, 2024 to July 24, 2024. The jury returned a unanimous verdict in Plaintiff's favor, awarding a total of $8,615,841.98 in damages: $6.5 million for noneconomic damages, $115,841.98 for economic damages, and $2 million for loss of consortium.

Plaintiff filed a Motion for Entry of Judgment on August 21, 2024, seeking entry of a $8,615,841.98 verdict plus pre-judgment interest and taxable costs. Defendants filed a Response on September 4, 2024, where they claim MICH. COMP. LAWS § 600.1483 caps the noneconomic damages Plaintiff can recover at $569,000. Defendants also argue that § 600.1483's cap does not violate the

4

Michigan Constitution. Plaintiff filed a Reply on September 25, 2024, arguing that § 600.1483's cap violates the Michigan Constitution.

Also on September 25, 2024, Plaintiff filed the present Motion to Certify. Plaintiff seeks an order certifying the following issue to the Michigan Supreme Court: "Do the caps on noneconomic damages found in MICH. COMP. LAWS § 600.1483 violate the Michigan Constitution because they violate the right to trial by jury, violate equal protection and/or violate the separation of powers and, therefore, should be struck down?" ECF No. 130, PageID.5152. First, Plaintiff argues that § 600.1483's damages cap violates the right to trial by jury because it violates her right "to have the existence and amount of damages determined by a jury," with the statute "usurp[ing] the jury's factfinding role." ECF No. 130, PageID.5162.

Second, Plaintiff claims the damages cap violates her equal protection rights because it impinges upon her right to trial by jury. Because the right to trial by jury is a fundamental right, Plaintiff posits, her equal protection claim is subject to strict scrutiny. Plaintiff further argues that the damages cap violates the equal protection clause because "it creates an impermissible classification scheme by arbitrarily distinguishing between (1) medical malpractice plaintiffs with serious injuries and those with relatively minor injuries; (2) medical malpractice plaintiffs as opposed to those injured through other forms of negligence; and (3) medical malpractice

5

tortfeasors whose negligence is the most serious." *Id.* at PageID.5163. Lastly, Plaintiff claims that § 600.1483's damages cap violates separation of powers because it intermeddles with the affairs of the judiciary. The Court ordered Defendants to file a Response, which they filed on October 9, 2024. Plaintiff filed a Reply on October 16, 2024.

## II. LEGAL STANDARDS

### A. MICH. COMP. LAWS § 600.1483

Under MICH. COMP. LAWS § 600.1483, medical malpractice actions brought under Michigan law are subject to a statutory cap on noneconomic damages. The statute defines noneconomic damages as "damages or loss due to pain, suffering, inconvenience, physical impairment, or physical disfigurement, loss of society and companionship, . . . loss of consortium, or other noneconomic loss." MICH. COMP. LAWS § 600.1483(3). The statute sets forth two caps. The "high" cap applies to cases where the malpractice caused certain permanent disabilities. MICH. COMP. LAWS § 600.1483(1). The "low" cap applies to all other situations. *Id.* These caps are adjusted by the Michigan State Treasurer "at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index." MICH. COMP. LAWS § 600.1483(4). As of January 31, 2024, the current "high" cap is $1,016,000, and the current "low" cap is $569,000. Dep't of Treasury, State of Mich., *Limitation on Noneconomic Damages and Product Liability Determination*

6

*on Economic Damages* (Jan. 31, 2024).[1]

## B. Certification of Issues to the Michigan Supreme Court

"When presented with an issue concerning the interpretation of a state law, a federal court's normal course is to 'make an *Erie* guess to determine how [a state supreme court], if presented with the issue, would resolve it.'" *In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 461 (6th Cir. 2023) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358-59 (6th Cir. 2013)) (alteration in original). "If, however, that issue is novel or unsettled, a federal court has the discretion to request that a state's highest court provide the definitive state-law answer through certification." *Id.* (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). The decision to certify an issue to a state supreme court "rests in the sound discretion of the federal court" and can be made *sua sponte* or upon a motion by one of the parties. *Id.*; *Lehman Bros.*, 416 U.S. at 391. Certification "not only preserves our 'time, energy, and resources,' but also furthers 'cooperative judicial federalism.'" *In re Nat'l Prescription Opiate Litig.*, 82 F.4th at 461 (quoting *Lehman Bros.*, 416 U.S. at 391).

---

[1] https://www.michigan.gov/treasury/-/media/Project/Websites/treasury/Uncategorized/2024/Economic-Reports-and-Notices-2024/Limitation-on-NonEconomic-Damages-Jan-24-Signed.pdf?rev=4d2f6e5c9b3744d7bb9ea39b2dabe148&hash=672B18CC6418584F0C8A52170AD18B13.

Eastern District of Michigan Local Rule 83.40 and Michigan Court Rule 7.308 govern this Court's certification of issues to the Michigan Supreme Court. Under Local Rule 83.40, this Court "may certify an issue for decision to the highest Court of the State whose law governs its disposition" if (1) the issue "is an unsettled issue of State law"; (2) the issue "will likely control the outcome of the federal suit"; and (3) "certification of the issue will not cause undue delay or prejudice." E.D. Mich. L.R. 83.40(a). In tandem with this rule, Michigan Court Rule 7.308 provides that "[w]hen a federal court . . . considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the [Michigan Supreme] Court." Mich. Ct. R. 7.308(A)(2)(a).

### III. ANALYSIS

The issue Plaintiff seeks certification of can be broken down into three sub-issues: whether, under the Michigan Constitution, MICH. COMP. LAWS § 600.1483's noneconomic damages cap violates (1) the right to trial by jury, (2) the equal protection clause, and (3) the separation of powers clause. For the reasons that follow, this Court finds that these issues satisfy Local Rule 83.40's and Michigan Court Rule 7.308's requirements. Therefore, certification of these issues to the Michigan Supreme Court is appropriate.

### A. These Issues Are Unsettled

Pursuant to Local Rule 83.40, this Court must first determine whether the issues Plaintiff seeks certification of are unsettled issues of state law. E.D. Mich. L.R. 83.40(a)(1). Whether an issue is unsettled under Michigan law turns on whether it is controlled by Michigan Supreme Court precedent. *See* Mich. Ct. R. 7.308(A)(2)(a). While federal courts generally "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks," an issue is unsettled if state supreme court precedent does not furnish federal courts with "a reasonably clear and principled course" to determine how it would resolve the issue. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted); *In re Nat'l Prescription Opiate Litig.*, 82 F.4th at 461.

Plaintiff correctly points out that the Michigan Supreme Court has never squarely addressed the constitutionality of § 600.1483's noneconomic damages cap. While this alone does not automatically render an issue unsettled, there are no Michigan Supreme Court cases that furnish this Court with a reasonably clear and principled course to determine how it would resolve the issues Plaintiff seeks certification of. For the reasons that follow, the cases Defendants rely upon— *Phillips v. Mirac, Inc.*, 470 Mich. 415 (Mich. 2004), *Zdrojewski v. Murphy*, 254 Mich. App. 50 (Mich. Ct. App. 2002), and *Jenkins v. Patel*, 471 Mich. 158 (Mich.

2004)—do not reflect settled state law. Therefore, this Court finds that whether § 600.1483's noneconomic damages cap violates (1) the right to trial by jury, (2) the equal protection clause, and (3) the separation of powers clause are unsettled issues of state law.

### i. *Phillips v. Mirac, Inc.*

Defendants argue that the Michigan Supreme Court's decision in *Phillips v. Mirac, Inc.*, 470 Mich. 415 (Mich. 2004), settles the constitutionality of § 600.1483's noneconomic damages cap. There, at issue was the statutory damages cap set forth in MICH. COMP. LAWS § 257.401(3), which limits a motor vehicle lessor's damages liability in certain cases involving motor vehicle leases of 30 days or less. *Id.* at 423. The plaintiff challenged this cap as violating her right to trial by jury and her equal protection rights under the Michigan Constitution. *Id.* at 420.

The court found that the damages cap did not offend the plaintiff's right to trial by jury. It began its analysis by "identify[ing] the scope of the right as enumerated in the [Michigan] Constitution," finding that the right to trial by jury encompasses the right to have a jury determine matters of fact. *Id.* at 424, 428. Specifically, "[i]t is for the jury to assimilate the facts presented at trial, draw inferences from those facts, and determine what happened in the case at issue." *Id.* at 428. Excluded from the jury's responsibilities, however, are "matters of law

concern[ing] the legal significance of those facts," such as "whether a party has met its burden of proof, whether certain evidence may be considered, which witnesses may testify, whether the facts found by the jury result in a party being held liable, and the legal import of the amount of damages found by the jury." *Id.* These matters of law are for courts to decide. *Id.* at 429.

The court then stated that "the Legislature has the power under [the Michigan] Constitution to abolish or modify nonvested, common-law rights and remedies," which includes "the less drastic step of leaving the cause of action intact, but limiting the damages recoverable for a particular cause of action from a particular defendant." *Id.* at 429-30 (citations omitted). This limit on a defendant's liability, the court reasoned, does not impinge the right to trial by jury because it "only limits the *legal* consequences of the jury's finding regarding the liability." *Id.* at 431 (emphasis in original). Put differently, the application of the damages cap is a matter of law for the court—not the jury—to resolve *after* the jury has completely discharged its factfinding responsibilities. *Id.* Therefore, the court concluded that the damages cap "does not offend the constitutional right of trial by jury because the amount the plaintiff actually receives was never within those things a jury can decide." *Id.* at 429-30.

This holding is in tension with other Michigan Supreme Court decisions. The Michigan Supreme Court has repeatedly stated that the right to trial by jury

11

encompasses the right to have a jury determine the damages a plaintiff is entitled to recover. *See, e.g.*, *Leary v. Fisher*, 248 Mich. 574, 578 (Mich. 1924) ("Plaintiff is entitled to a right of trial by jury, and one of the necessary incidents of the trial of cases of this character by jury is that the jury shall fix the amount of damages."); *Aho v. Conda*, 347 Mich. 450, 455 (Mich. 1956) ("[T]he question of damages is fundamentally a jury question."). It has also acknowledged that this right includes the determination of noneconomic damages. *See, e.g.*, *Precopio v. City of Detroit*, 415 Mich. 457, 464 (Mich. 1982) ("[A]wards for personal injury should rest within the sound judgment of the trier of fact, particularly awards for pain and suffering[] . . . ."); *Weil v. Longyear*, 263 Mich. 22, 26 (Mich. 1933) (stating that the determination of pain and suffering damages "rests in the sound judgment of the trier of the facts"). Furthermore, in *Rouse v. Gross*, 357 Mich. 475 (Mich. 1959), the Michigan Supreme Court stated that "[t]he right of trial by jury ordinarily refers to a right to present or defend an actionable claim to one jury to the point of jury verdict *and judgment*," which suggests that the damages awarded in a court's final judgment are to be determined by the jury. *Id.* at 481 (emphasis added); *see also Leary*, 248 Mich. at 578 (stating that the jury's "verdict should not be interfered with unless plainly excessive"). None of these cases have been

overruled,[1] nor does *Phillips* address the interplay between its holding and these cases. Therefore, given the friction between *Phillips* and these Michigan Supreme Court cases, this Court does not believe *Phillips* reflects settled law on the issue of whether statutory damages caps violate the right to trial by jury.

Nor does this Court conclude *Phillips* settles the issue of whether statutory damages caps violate the Michigan Constitution's equal protection guarantees. By way of background, the Equal Protection Clause of the Michigan Constitution provides, in relevant part, that "[n]o person shall be denied the equal protection of the laws." Mich. Const. art. I, § 2. When state legislation classifies individuals in a manner that results in their different treatment under the law, the degree of scrutiny applied to an individual's equal protection claim depends on the nature of the classification. *Phillips*, 470 Mich. at 432-33. If the statutory classification "is based on 'suspect' factors such as race, national origin, ethnicity, or a 'fundamental right,'" courts apply strict scrutiny, under which the statutory classification will be upheld only if the government "demonstrate[s] that [the] classification has been

---

[1] While some of the cases cited in this paragraph were decided before Michigan's 1963 Constitution took effect, the 1963 Constitution did not change the substance of this right as it existed in Michigan's 1908 Constitution. *Compare* Mich. Const. art. II, § 13 (1908) ("The right of trial by jury shall remain, but shall be deemed waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law."), *with* Mich. Const. art. I, § 14 (1963) ("The right to trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.").

13

precisely tailored" to "serve a compelling governmental interest." *Id.* at 432-33 (citations omitted). If the statutory classification rests on "bases [such] as illegitimacy and gender," courts apply intermediate scrutiny, under which the statutory classification "will be upheld only if it is substantially related to an important governmental objective." *Id.* at 433 (citations omitted). If neither strict scrutiny nor intermediate scrutiny apply, courts apply the "highly deferential" rational basis standard of review, under which the statutory classification will be upheld if it is rationally related to a legitimate government purpose. *Id.*

In *Phillips*, the plaintiff argued that the statutory damages cap at issue violated her equal protection rights because "she, unlike plaintiffs in litigation *not* concerning rental cars, cannot recover what the jury has decided are her damages." *Id.* at 431 (emphasis in original). She claimed this statutory classification was subject to strict scrutiny because it interfered with her fundamental right to trial by jury. *Id.* at 432. The court rejected this argument. Keeping with precedent requiring fundamental rights to be identified at "the most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified," the court characterized the right asserted by the plaintiff as "not the overarching right to have a jury trial but, more precisely, a claimed right to have a jury's assessment of damages be unmodifiable as a matter of law." *Id.* (citation omitted). The court found that "[t]he right to full recovery in tort is not only not a

14

fundamental right, it is not a right at all," rendering strict scrutiny inapplicable. *Id.* at 434. Instead, the court applied rational basis, holding that there was no equal protection violation because the damages cap was rationally related to the government's legitimate interest in reducing insurance costs for automobile lessors. *Id.* at 435.

Here too, this holding is at odds with the Michigan Supreme Court decisions finding that the right to trial by jury encompasses the right to have a jury determine the damages a plaintiff is entitled to recover. It is well-settled that the right to trial by jury is a fundamental right. *People v. De Cesare*, 220 Mich. 417, 425 (Mich. 1922) (quoting *Gouled v. United States*, 225 U.S. 298, 303-04 (1921)). If the right to trial by jury embodies the right to have a jury determine damages, it logically follows that the right to have a jury determine damages is, too, a fundamental right. Following this logic, the *Phillips* plaintiff's equal protection claim should have triggered strict scrutiny. Given the differences in stringency between strict scrutiny and rational basis, it is possible the *Phillips* court would have found that the statutory damages cap at issue there violated the plaintiff's equal protection rights had it applied strict scrutiny instead of rational basis. Therefore, *Phillips* does not settle the issue of whether statutory damages caps violate the Michigan Constitution's equal protection guarantees.

Lastly, *Phillips* does not address the issue of whether statutory damages caps

violate separation of powers, as this issue was not before the court. Therefore, based on the foregoing, this Court finds that *Phillips* does not reflect settled state law on the issues Plaintiff seeks certification of.

        ii. *Zdrojewski v. Murphy*

Defendants argue that *Zdrojewski v. Murphy*, 254 Mich. App. 50 (Mich. Ct. App. 2002), also settles the constitutionality of § 600.1483's damages cap. There, the Michigan Court of Appeals squarely upheld the constitutionality of § 600.1483's damages cap, addressing all three issues Plaintiff seeks certification of. For purposes of certification, however, *Zdrojewski* does not reflect settled law. Michigan Court Rule 7.308 makes clear that certification is permitted where issues "are not controlled by *Michigan Supreme Court* precedent." Mich. Ct. R. 7.308(A)(2)(a) (emphasis added). *Zdrojewski* was decided by the Michigan Court of Appeals. Furthermore, even if this Court were to accept *Zdrojewski* as instructive, its rationales on the trial by jury and equal protection issues mirror those articulated in *Phillips*. Therefore, *Zdrojewski* suffers from the same incongruities with Michigan Supreme Court precedent as *Phillips*.

Lastly, this Court takes seriously that less than one year after *Zdrojewski* was decided, a different Michigan Court of Appeals panel wrote that they "believe[d] that this Court's decision in *Zdrojewski* was incorrect and should be overruled." *Wiley v. Henry Ford Cottage Hosp.*, 257 Mich. App. 488, 509 (Mich. Ct. App.

2003). Absent rules binding them to *Zdrojewski*'s holding, this panel "would [have held] that the medical malpractice noneconomic damages cap in M.C.L. § 600.1483 violates the right to trial by jury as guaranteed by the Michigan Constitution." *Id.* at 506. This tension within the Michigan Court of Appeals regarding the constitutionality of § 600.1483's damages cap is most appropriate for resolution by the Michigan Supreme Court. Therefore, *Zdrojewski* does not reflect settled law.

### iii. *Jenkins v. Patel*

Lastly, Defendants claim *Jenkins v. Patel*, 471 Mich. 158 (Mich. 2004), settles the constitutionality of § 600.1483's damages cap. There, the Michigan Supreme Court evaluated the interplay between the Wrongful Death Act and § 600.1483's noneconomic damages cap. The Wrongful Death Act is a Michigan law providing, in pertinent part, that "[i]n every action under this section, the court or jury may award damages as the court and jury shall consider fair and equitable." MICH. COMP. LAWS § 600.2922(6). The court found that this provision does not bar the application of § 600.1483's damages cap because the cap applies "[o]nly after the court or jury has, in its discretion, awarded damages as it considers fair and equitable." *Jenkins*, 471 Mich. at 172. In support of this holding, the court referenced *Phillips* and *Zdrojewski* to support the proposition that § 600.1483's noneconomic damages cap "does not diminish the ability of the trier of fact to

render a fair and equitable award of damages; it merely limits the plaintiff's ability to recover the full amount awarded in cases where the cause of action is based upon medical malpractice and the amount exceeds the cap." *Id.* at 172-73.

Defendants' reliance on *Jenkins* is misplaced. At bottom, the issue presented in *Jenkins* was one of statutory interpretation. The court used *Phillips* and *Zdrojewski* to support its holding that § 600.1483's damages cap "does not violate a plaintiff's *statutory* right to have the court or jury 'award damages as the court or jury shall consider fair and equitable,'" as provided for in the Wrongful Death Act. *Id.* at 173 (quoting MICH. COMP. LAWS § 600.2922(6)) (emphasis added). Beyond referencing *Phillips* and *Zdrojewski*, the court did not analyze whether § 600.1483's damages cap violates the constitutional right to trial by jury, equal protection, or separation of powers. Instead, it remanded the plaintiff's constitutional challenges to the Michigan Court of Appeals. Therefore, *Jenkins* is not instructive.

In conclusion, *Phillips*, *Zdrojewski*, and *Jenkins* do not furnish this Court with a reasonably clear and principled course to determine how the Michigan Supreme Court would resolve the issues Plaintiff seeks certification of. This Court is unaware of any other Michigan Supreme Court cases evaluating the constitutionality of statutory damages caps. Therefore, this Court holds that whether § 600.1483's noneconomic damages cap violates (1) the right to trial by

jury, (2) the equal protection clause, and (3) the separation of powers clause are unsettled issues of state law.

### B. These Issues Will Control the Outcome of the Case

Next, this Court finds that these issues will control the outcome of the case because the noneconomic damages Plaintiff is entitled to recover turns on the constitutionality of § 600.1483's noneconomic damages cap. While Defendants contend that this issue will not control the outcome of this case because they "intend to seek a new trial," this argument is misguided. ECF No. 131, PageID.5350. Defendants cannot pursue a new trial prior to this Court issuing a final judgment. This Court cannot issue a final judgment until the constitutionality of § 600.1483 is resolved. Therefore, these issues will control the outcome of the case, as their resolution is necessary for this Court to issue a final judgment.

### C. Certification Will Not Cause Undue Delay or Prejudice

Lastly, the Court finds that certification of these issues will not cause undue delay or prejudice. Defendants claim they will suffer undue prejudice from the accrual of interest on the damages they will owe Plaintiff during the time it takes the Michigan Supreme Court to resolve this issue. This, however, does not rise to the level of *undue* prejudice. Instead, this Court believes it is an unavoidable consequence of litigation. Therefore, the Court finds that certification of this issue will not cause undue delay or prejudice.

19

## IV. CONCLUSION

Based on the foregoing, this Court finds that certification of the following issues to the Michigan Supreme Court is appropriate: whether, under the Michigan Constitution, MICH. COMP. LAWS § 600.1483's noneconomic damages cap violates (1) the right to trial by jury, (2) the equal protection clause, and (3) the separation of powers clause. Out of respect for comity and federalism, this Court finds these state law issues are most suitable for resolution by the Michigan Supreme Court. Therefore, Plaintiff's Motion to Certify [#130] is GRANTED.

SO ORDERED.

Dated: November 8, 2024                    /s/Gershwin A. Drain
                                           GERSHWIN A. DRAIN
                                           United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 8, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager